ON APPLICATION FOR REHEARING
On September 20, 1991, this Court issued its original opinion in this case. A majority of the Court summarily affirmed the judgment in this case. Justice Maddox concurred in the affirmance as to the derivative claim but dissented from the affirmance as to that portion of the judgment in favor of the minority stockholder against the majority stockholders. Justice Houston, joined by Justice Steagall, dissented as to both. The Court heard oral argument in support of, and in opposition to, the appellants' application for rehearing. The application is granted; the original opinion in this case is withdrawn, and the following is substituted therefor.
Marc and Bernard Michaud, father and son, and Gene Carbine, ran an advertisement in a local newspaper seeking a person interested in entering into a venture to open and operate a Rax Restaurant in Huntsville. James Morris, the plaintiff in this litigation, responded to this advertisement.
Ultimately, Morris, Marc Michaud, Bernard Michaud, and Gene Carbine formed *Page 887 
two separate entities to effectuate this business venture. A partnership, known as Edge Partnership, was formed to purchase land and construct a building for the restaurant. Morris contributed $50,000 to that partnership, as did each of the other partners. The partnership owned all of the venture's assets.
The parties also formed a corporation, known as Edge Corporation, created by capital contributions of $250 from each of the four individuals. The corporation had no assets other than this small capital contribution. The purpose of the corporation was to operate a Rax franchise restaurant. Morris, Marc Michaud, Bernard Michaud, and Gene Carbine were each issued 25% of the stock in the Edge Corporation.
Before the restaurant opened, Gene Carbine withdrew from the partnership and Marc Michaud purchased Carbine's share in the corporation, making Marc Michaud a 50% shareholder. Bernard Michaud and Morris each remained 25% shareholders.
Morris was named vice-president of operations, general manager of the corporation, and general manager of the restaurant, because he was the only one of the four original investors who had prior restaurant experience. Bernard Michaud was named assistant manager of the restaurant. Morris began receiving a salary in February 1986, although the restaurant did not open until April 1987.
Business was not good and sales declined throughout 1987. Morris and Bernard Michaud differed in their views as to how the restaurant should be managed. The corporation lost more than $20,000 in its first seven months of operation.
In February 1988, the Michauds and Morris met with the corporation's accountant and reviewed the books; the accountant confirmed the losses. At the meeting, the corporation terminated Morris as general manager of the restaurant and named Bernard Michaud as his replacement.
Morris sued the Michauds on April 19, 1988. He first sought dissolution of the Edge Partnership and asked for an accounting. His second count stated a shareholder's derivative claim on behalf of Edge Corporation, and his third count sought damages for a loss to his personal interest in Edge Corporation.
After an ore tenus proceeding on the first count, the judge ordered a dissolution and an accounting of Edge Partnership.
Counts two and three were tried before a jury, beginning August 27, 1990. On the derivative claim the jury found that the corporation had suffered a loss of $150,000. The trial court ordered the defendants to pay that sum to Morris on behalf of the corporation.
Morris's third count sought personal damages for Morris as a minority shareholder against the Michauds as majority shareholders, apparently on the theory that the majority had acted oppressively against Morris as a minority shareholder. The jury awarded Morris compensatory damages of $85,500 and punitive damages of $110,000. The court entered judgment for those amounts.
The trial court denied the defendants' post-judgment motions, and they appealed the judgment on counts two and three of Morris's complaint. On December 13, 1990, the defendants also appealed the denial of their Rule 60, A.R.Civ.P., motion. We reverse the judgment and remand the cause. Because of our holdings in regard to the appeal from the judgment, the appeal from the denial of the Rule 60 motion is moot.
 The Derivative Claim
Shareholders' derivative suits are based on the wrongs committed against a corporation by an officer or director of that corporation. See Jefferson County Truck Growers Ass'n v.Tanner, 341 So.2d 485, 487 (Ala. 1977). It is fundamental that the corporation must have suffered an actual injury for there to be grounds for a shareholder's derivative suit, and that the only damages recoverable in a derivative suit are those related to the loss or damage proximately caused by the wrong committed. Deal v. Johnson, 362 So.2d 214 (Ala. 1978). *Page 888 
Morris alleged that the Michauds mismanaged the corporation, thereby harming it, and, thus, damaging his interest in the corporation, when they decided to terminate him as the general manager of the restaurant. The Michauds assert that the claim based upon Morris' allegation seeks unfairly to extend the shareholder's derivative theory of recovery to cover the everyday employment decisions of majority shareholders. "Corporate officers are required to act with fidelity and in good faith, subordinating their personal interests to the interests of the corporation." Hardy v. Hardy, 507 So.2d 404,406 (Ala. 1986). (Citation omitted.) However, what has become known as the "business judgment" rule allows corporate management the freedom to make decisions in conducting the corporation's internal business affairs. This Court has expressed this rule as follows:
 "If in the course of management, directors arrive at a decision, within the corporation's powers . . . , for which there is a reasonable basis, and they act in good faith, as the result of their independent discretion and judgment, and uninfluenced by any consideration other than what they honestly believe to be the best interest of the corporation, a court will not interfere with internal management and substitute its judgment for that of the directors to enjoin or set aside the transaction or to surcharge the directors for any resulting loss."
Roberts v. Alabama Power Co., 404 So.2d 629, 631 (Ala. 1981), quoting H. Henn, Law of Corporations, § 242 (2d ed. 1970).
Although Morris may have been asked to participate in the corporation because of his restaurant management skills, the Michauds' decision to terminate him as manager of the restaurant and to replace him with Bernard Michaud was an internal management decision. While Morris presented evidence that Bernard Michaud was inexperienced and incompetent as a manager, and also showed that the restaurant lost over $100,000 while Bernard Michaud was acting as general manager, he failed to show that the restaurant would have performed differently had he continued as general manager.
We hold that the evidence failed to show that the Michauds breached a fiduciary duty to the corporation by terminating Morris as general manager of the restaurant. As majority shareholders in the corporation, the Michauds were confronted with the fact that the corporation was losing money at an alarming rate. Morris himself agreed that, under those circumstances, managers are held responsible. The majority cannot be held liable to the corporation in a derivative action for exercising a business judgment to replace management under these facts.
That portion of the judgment relating to the derivative claim is reversed.
 The Minority Shareholder Oppression Claim
The jury returned a verdict in favor of Morris on his claim that the majority shareholders had conducted the corporate affairs in such a way as to oppress his rights as a minority shareholder. This court has recognized that minority shareholders have a right to fairness by the majority and that minority shareholders may not be deprived of their just share of corporate gains even though the majority has the right of control of the corporation. Burt v. Burt Boiler Works, Inc.,360 So.2d 327 (Ala. 1978); Galbreath v. Scott, 433 So.2d 454
(Ala. 1983); Ex parte Brown, 562 So.2d 485, 492 (Ala. 1990). Certain basic expectations of investors are enforceable in the courts, and among those is a right to share proportionally in corporate gains.
Shareholders in close corporations have a right to share in corporation earnings, and a majority cannot deprive such shareholders of that right by failing to declare dividends or otherwise manipulating corporate earnings to squeeze out minority interests.[1] Applying these principles to the facts of this case, we note that there *Page 889 
were no corporate earnings, so the majority did not unfairly deprive Morris of his pro rata share in corporate earnings by oppressively managing the affairs of the corporation. The only evidence Morris offers to show oppression at the hands of the majority is the fact that the majority exercised control of the corporation to terminate his role as general manager of the restaurant.
Although Morris might have had a legitimate expectation that he would be retained as general manager of the corporation, we hold that expectations, standing alone, are not enough under the facts of this case to show oppression at the hands of the majority. To the contrary, given the poor performance of the restaurant, a change in management does not appear to be inappropriate or against the best interest of the corporation as a whole, much less oppressive to the minority. Certainly, under the evidence in this case, the action taken by the majority does not support a finding that, viewed objectively, this action amounts to oppression of the minority by the majority shareholders.
We hold that the trial court erred in submitting the third count of Morris's complaint to the jury. Morris failed to produce evidence from which the jury could find that the majority shareholders, in voting to terminate him as manager of the restaurant, impermissibly oppressed his interest as a minority shareholder in the corporation. The majority had a legitimate right to exercise control of the corporation in its best interests. Under the facts produced here, that right included the right to change management. We hold that Morris failed to make out a prima facie claim of oppression.
The defendants moved for a directed verdict on this claim, as well as on the derivative claim. They also moved for a JNOV, or, in the alternative, a new trial. Because the plaintiff failed to produce evidence to support either claim, the trial court erred in denying these motions. For the foregoing reasons, the judgment of the trial court is reversed and the cause is remanded for the entry of a judgment consistent with this opinion. The appeal from the denial of the Rule 60 motion is dismissed as moot.
1900338 — ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION GRANTED; REVERSED AND REMANDED.
1900442 — DISMISSED AS MOOT.
HORNSBY, C.J., and MADDOX, ALMON, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] Andrew P. Campbell, "Litigating Minority Shareholder Rights and the New Tort of Oppression," Ala. Lawyer (March 1992) at 111.